**S & A BEVERAGE COMPANY OF BEAUMONT, NO. 2 d/b/a Bennigan's Tavern and Steak & Ale of Texas, Inc., Appellants,**

**v.**

**Rachel DeROUEN, Appellee.**

No. 09–87–082 CV.

Court of Appeals of Texas, Beaumont.

June 30, 1988.

Rehearing Denied July 20, 1988.

William B. Coffey, Jr., Strong, Pipkin, Nelson & Bissell, Beaumont, for appellants.

Glen W. Morgan, Reaud, Morgan & Quinn, Inc., Beaumont, for appellee.

## OPINION

BURGESS, Justice.

Appellee, Rachel DeRouen, was a customer at Bennigan's Tavern which was owned and operated by appellants. Ms. DeRouen, just prior to leaving, went to the ladies' room where she was sexually assaulted by Bobby Earl Johnson, who was also a patron of the establishment. Appellee filed suit for personal injuries, and the jury found appellants negligent and awarded damages of $75,000. Appellants appeal the judgment entered in accordance with the jury's findings.

■ Point of error number one complains of the trial court's submission of special issue 1.c.

### THE TRIAL COURT'S ISSUE

"PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would

not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

ISSUE NO. _1_

Do you find from a preponderance of the evidence that on the occasion in question Bennigan's was negligent in failing to properly supervise and/or control the premises, failing to have adequate security, failing to refuse service to Bobby Johnson. Answer "Yes" or "No" on each line in Column 1. If any of your answers in Column 1 are "Yes", was any such negligence a proximate cause of the occurrence in question?

Answer "Yes" or "No" on the corresponding line of Column 2.

| | Column 1 Negligence | Column 2 Proximate Cause |
|---|---|---|
| a. Supervision or control | Yes | No |
| b. Adequate security | No | — |
| c. Refusing Service | Yes | Yes |

APPELLANTS' REQUESTED ISSUES

SPECIAL ISSUE NO. ___

On the occasion in question, was there inadequate security or inadequate supervision *or failing to refuse service JWB* [italicized portions interlineated by appellants' counsel] at Bennigan's?

ANSWER: Yes or No

_____

If you have answered Special Issue No. ___ "yes", and only in that event, then answer Special Issue No. ___.

SPECIAL ISSUE NO. ___

Did Bennigan's know, or in the exercise of ordinary care should have known, that the security or supervision *or fail to refusing [sic] service JWB* at Bennigan's was inadequate.

ANSWER: Yes or No

_____

If you have answered Special Issue No. ___ "yes", and only in that event, then answer Special Issue No. ___.

SPECIAL ISSUE NO. ___

Was Bennigan's failure to correct the inadequate security and supervision *or fail to refusing [sic] service JWB* negligent?

ANSWER: Yes or No

_____

If you have answered Special Issue No. ___ "yes", and only in that event, then answer Special Issue No. ___.

SPECIAL ISSUE NO. ___

Was that negligence a proximate cause of the occurrence in question?

ANSWER: Yes or No

_____

You are instructed that: "NEW AND INDEPENDENT CAUSE" means the act or omission of a separate and independent agency, not reasonably foreseeable, which destroys the casual connection, if any, between the act or omission inquired about the occurrence in question, and thereby becomes the immediate cause of such occurrence.

Do you find from a preponderance of the credible evidence that Bennigan's knowingly served an alcoholic beverage or alcoholic beverages to Bobby Earl Johnson when he was intoxicated.

ANSWER: Yes or No

_____

APPELLANTS' OBJECTIONS TO THE COURT'S CHARGE

MR. COFFEY: Comes now your defendant, Bennigan's, and makes and files this its objections to the Court's Charge prior to the delivery of the Charge to the jury, and would show unto the Court as follows:

1. The Court has erred in failing to submit the-the [sic] "offered instruction and definition on new and independent cause." Your defendant would respectfully submit the Nixon and Wolf Opinions on point as both cases and this case

concerns the criminal act of third parties on premises.

2. Your defendant would object to the submission of Special Issue No. 1 as it is a double and triple submission of the same concept, namely: Whether or not Bennigan's failed to provide the plaintiff, Rachel Derouen with a reasonably safe place to eat and drink.

3. Your defendant would further object to the submission of Special Issue No. 1 as there is no evidence or in the alternative insufficient evidence to support the submission of same.

4. Your defendant would specifically object to the submission of Special Issue 1(c) which is "Refusing service" as that is nothing more than a submission of "Dram Shop" as he enunciated by the Pool vs. El Chico decision, as the Pool vs. El Chico decision is quite clear that it is purely objective and must be knowingly on the part of Bennigan's. And, number two, the duty only is owed to the motoring public.

. . . .

7. Your defendant further objects to Special Issue No. 1 as it aside from being a double submission does not follow the pattern jury charge and as stated earlier should be submitted as a one concept issue. Your defendant further objects to the denial of the Court, of its pro-offered [sic] issues in line with the above objections.

Appellants urge that the issue as submitted was not in substantially correct form. Appellants thoroughly analyze the court of appeals holdings in *Poole v. El Chico Corp.*, 713 S.W.2d 955 (Tex.App.—Houston [14th Dist.] 1986), *aff'd*, 732 S.W.2d 306 (Tex.1987), and *Evans v. Joleemo, Inc.*, 714 S.W.2d 394 (Tex.App.—Corpus Christi 1986), *aff'd*, 732 S.W.2d 306 (Tex. 1987), as well as our supreme court's opinion in both of the cases. Appellants' arguments go to the substance of the issues, *i.e.*, duty, knowing or should have known of the intoxicated patron, and the applicability of "dram shop liability" in non-motoring cases. We need not address these substantive problems, under this point however. A party cannot complain on appeal when the issues or instructions given the jury are substantially the same as those requested by appellants. *Dailey v. Wheat*, 681 S.W.2d 747, 757 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *American Motorists Ins. Co. v. Ellison*, 364 S.W.2d 83 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.). The only difference between the issue submitted and the issues proffered by appellants is that the court's issues are combined issues. Because appellants' requested issues are in substantially the same form as those submitted to the jury, appellants cannot now complain. Point of error number one is overruled.

## FORESEEABILITY AND CRIMINAL CONDUCT AS SUPERSEDING CAUSE

■ Appellants argue under points of error two and three that the trial court should have granted their motion for directed verdict and motion for judgment n.o.v. because the sexual assault of Ms. DeRouen by Bobby Johnson was unforeseeable and a superseding cause as a matter of law. Although the negligence of appellant was ultimately based upon the duty an alcoholic beverage licensee owes the general public not to serve alcoholic beverages to certain persons, appellants argue that *El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987) does not apply because *El Chico* only applies to cases involving the "motoring public." We disagree. While Justice Spears alluded to motor vehicles and driving while intoxicated, he stated clearly and without reservation:

Based on both common law negligence principles and a violation of sec. 101.-63(a), we hold an alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know the patron is intoxicated. A licensee who violates that duty by serving alcoholic beverages to an intoxicated person is negligent as a matter of law. Whether a licensee breached his duty and whether that breach proximately caused a plaintiff's injuries are issues of fact for a jury to resolve.

*Id.* at 314. He went on to say this about foreseeability:

Foreseeability, the second element of proximate cause, means the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others. *Nixon,* 690 S.W.2d at 550; [Missouri Pacific Railroad Company v.] *American–Statesman,* 552 S.W.2d [99] at 103. Foreseeability does not require the actor anticipate the particular accident, but only that he reasonably anticipate the general character of the injury. *Nixon.*

*Id.* at 313. The *El Chico* court recognized the general rule of superseding criminal conduct in stating:

Generally, a person's criminal conduct is a superseding cause extinguishing liability of a negligent actor. ... The tortfeasor's negligence, however, is not superseded when the criminal conduct is a foreseeable result of the negligence. *Nixon,* at 550.

*Id.* at 313–14.

Earlier in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex. 1985), the court had quoted with approval the RESTATEMENT (SECOND) OF TORTS sec. 448 (1965):

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Nixon,* 690 S.W.2d at 550. Consequently, Texas has adopted the rule that criminal conduct as a superseding cause is a function of foreseeability. The trial court did not err in refusing to grant either of the motions. The two points of error also complain there was insufficient evidence to support the jury's findings of foreseeability and proximate cause. No motion for new trial was filed, therefore factual insufficiency was not preserved. *TEX.R.CIV.P. 324(b).* Points of error two and three are overruled.

■ Point of error number four alleges the trial court erred in failing to submit an instruction on new and independent cause. Appellants base their argument upon the criminal conduct of Bobby Johnson being the new and independent cause. Under previous points, we have held that the criminal conduct is a function of foreseeability. It is not error for the trial court to refuse a new and independent cause instruction where the act alleged to be a new and independent cause is dependent on the defendant's negligent act. *Allied Bank West Loop v. C.B.D. & Assoc.,* 728 S.W.2d 49, 55 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The assailant testified that he was intoxicated when he entered Bennigan's, that he was served from three to five more drinks while there and that it was his intoxicated state that triggered the sexual assault. The trial court did not err in refusing the definition.[1] Point of error number four is overruled.

■ The next point of error complains of the failure to grant a mistrial as evidenced by the following excerpt:

MR. MORGAN: Would that particular incident being a defendant, being sued, make you one way or the other feel like this is your chance to get even with someone or anything like that?

JUROR NO. 18: Let me ask you one question. There is no Dram Shop Insurance in the State of Texas?

THE COURT: Approach the bench.

(WHEREUPON COUNSEL AND JUROR 18 APPROACH THE BENCH FOR AN OFF–THE–RECORD DISCUSSION OUT OF THE HEARING OF THE JURY PANEL)

. . . .

---

1. Actually, the proximate cause definition did include the phrase "new and independent cause." It was simply not defined.

(WHEREUPON THE FOLLOWING PROCEEDINGS ARE HELD OUTSIDE THE PRESENCE AND HEARING OF THE JURY, TO–WIT:

THE COURT: All right.

MR. COFFEY: I have a short motion here. Comes now the defendant, Bennigan's and makes and files this its Motion for Mistrial and would show unto the Court as follows:

At the time of the incident which Bennigan's complains to the Court. The Motion for Mistrial is orally made to the Court outside the presence of the Jury and the Court allowed the motion to be made at this time so as not to interrupt the orderly flow of the interrogation of the jury. Is that correct, Your Honor?

THE COURT: That's correct.

MR. COFFEY: Mr. Kemp, No. 18, who has now been excused for cause by the Court, during a question and answer period with Mr. Morgan brought the Dram Shop Law, the fact that—and asked a specific question on whether or not there is or is not a Dram Shop compensation system in Texas and that—

THE COURT: Excuse me. I thought he said Dram Shop insurance.

MR. BRIDGER: He did say Dram Shop insurance.

MR. COFFEY: Well, okay, that is funded by insurance or asked Dram Shop insurance. One of the other. I couldn't remember the exact language.

But in any event, the point is that insurance was interjected into the case and in specific with regard to Dram Shop and Dram Shop Laws which Mr. Morgan all through his voir dire made a very heavy point of.

I think that insurance has been interjected into this case to the detriment of the defendant. I would also point out that that point in time the Court called a hearing in front of the bench outside the presence of the jury, but the jury after all of this happened saw us talking, saw Mr. Kemp come forward and discussion therefore ensued and the jury is now, of course, aware that Mr. Kemp is not on the jury, not for the fact for cause but simply because Mr. Kemp is not on the jury and could very well tie that into the conversation at the bench.

I think that in the overall context therefore it transferred in the way it transpired that insurance has been fatally interjected into this trial.

THE COURT: All right.

MR. COFFEY: For that reason the defendant, Bennigan's would respectfully request a mistrial.

THE COURT: All right. For the record, I would like for the record to reflect that after the brief conference at the bench Mr. Kemp took his seat and was instructed by the Court before the bench, out of the hearing of the other jurors, not to mention the discussion with other jurors, not to talk about it or to even say that I was going to let him go for cause. He then took his seat with his remaining jurors and did not exit the courtroom.

I would further like the record to reflect that I excused Mr. Kemp for cause but not on the grounds that are the subject of this motion for mistrial.

MR. COFFEY: That is correct, Your Honor. All of that is correct.

THE COURT: And your motion is denied.

Appellants argue this requires reversal because of the following language in *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962):

If anything is said from which the jury might reasonably infer that the defendant is insured, the court may either order a mistrial or instruct the jury not to consider the improper statement and then await the verdict before determining whether to grant a new trial. It should not, however, magnify the matter and perhaps lead the jurors to believe that insurance is a material consideration by advising them that the defendant does not have such protection.

The court, however, went on to hold that the mention of insurance does not always require a reversal and that the complaining party must show that it probably did cause the rendition of an improper judgment in the case. Other than reciting the mention of insurance, appellants have not attempted

to show how this led to the rendition of an improper judgment. This point of error is overruled.

 The final point of error complains of the following portion of closing argument:

MR. MORGAN: ... Where is the waiter? They all sign the ticket. They have the tickets. We read that into evidence.

MR. COFFEY: Your Honor, I have to object. He could have brought the waiter.

MR. MORGAN: Your Honor, it's just my argument.

MR. COFFEY: No proof of control. He's outside the record.

MR. MORGAN: I have a right to draw reasonable inferences from the record. We read into evidence that they have the name and can locate the waiter or waitress at the table, and I'm drawing a reasonable inference from his absence. Not from what he would testify to or anything like that.

MR. COFFEY: Your Honor, I gave him a list of everybody in that store years ago.

THE COURT: Move on to something else.

MR. MORGAN: Thank you.

Appellee's closing argument is followed by this exchange:

THE COURT: All right. Ladies and gentlemen, that concludes the summation. I'm going to let you go to lunch now and be back at 1:30 and Eddie will take you in the jury room where you all will begin your deliberations, select a presiding juror and have the Charge read aloud in its entirety.

MR. COFFEY: May we approach the bench first, Your Honor?

THE COURT: Yes.

(WHEREUPON COUNSEL FOR BOTH PARTIES APPROACH THE BENCH FOR AN OFF–THE–RECORD DISCUSSION OUT OF THE HEARING OF THE JURY, AFTER WHICH THE PROCEEDINGS RESUME AS FOLLOWS, TO–WIT)

MR. COFFEY: (Out of the hearing of the jury) We move for a mistrial at this time before the jury goes out to deliber-

ate based upon the final arguments of Mr. Morgan, counsel for the plaintiff, in that he alluded to the fact that we failed to bring someone that could have proven or disproved, the negative. There's no proof in the record that we had any control over any such person.

MR. BRIDGER: Mr. Morgan's inference that we failed to call someone in his basis that their testimony would be prejudicial to us for the inference that a person called would have had prejudicial testimony against the defendant is improper in that there is absolutely no proof in the record that we had or continue to have control over any such person. We're moving for mistrial on that basis.

THE COURT: What are you asking the Court to do?

MR. BRIDGER: I'm asking the Court to either instruct the jurors that that is an improper inference and cannot draw on it because there is no proof in the record that there was control over any of the people. He's suggesting that we should have called to prove anything about this case especially Ms. Simeon who no longer works for us and she testified to that as considering any of the waiters and waitresses. If he makes that inference and they're allowed to in turn return a verdict maybe based on that, it's harmful error. We're wanting you to instruct them that they cannot rely on that inference that Mr. Morgan has made regarding our failure to call anyone.

THE COURT: Let's go off the record.

(WHEREUPON THERE ARE OFF–THE–RECORD DISCUSSIONS BETWEEN THE COURT AND COUNSEL, AFTER WHICH THE PROCEEDINGS RESUME IN OPEN COURT AS FOLLOWS, TO–WIT)

THE COURT: Go to lunch. Be back at 1:30.

(WHEREUPON THE COURT IS IN THE NOON RECESS)

(WHEREUPON THE PROCEEDINGS ARE CONCLUDED)

Arguably, the remark was not improper. *See Brazos Graphics, Inc. v. Arvin Indus.,*

574 S.W.2d 240, 244 (Tex.Civ.App.—Waco 1978), *writ ref'd n.r.e. per curiam,* 586 S.W.2d 841 (Tex.1979) and *Texas Power & Light Co. v. Walker,* 559 S.W.2d 403, 406 (Tex.Civ.App.—Texarkana 1977, no writ). However, if improper, it was not of such a nature that it could not have been cured by an instruction. Therefore, to preserve error, there must have been a contemporaneous objection and request for an instruction. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979). There being no objection nor request for an instruction, nothing is preserved for review. This point of error is overruled. The judgment of the trial court is affirmed.

AFFIRMED.